# CIRCUIT COURT OF THE CITY OF RICHMOND

Robert H. Vaughan,
Executor of the Estate of
J. P. Vaughan, III,
and Teddy Gray Bowden

v.

James S. Gilmore, III, et al.

### Case No. HJ-2232-1

Robert H. Vaughan,
Executor of the Estate of
J. P. Vaughan, III,
and Teddy Gray Bowden

v.

Mark L. Earley et al.

### Case No. HK-10-1

### February 23, 1999

BY JUDGE RANDALL G. JOHNSON

These two cases, in which demurrers have already been sustained, are before the Court on defendant Commonwealth of Virginia's motion for sanctions under Va. Code § 8.01-271.1. That Section provides, in pertinent part:

The signature of an attorney or party constitutes a certificate by him that (i) he has read the pleading, motion, or other paper, (ii) to the best of his knowledge, information and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and (iii) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation ... .

If a pleading, motion, or other paper is signed or made in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed the paper or made the motion, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper or making of the motion, including a reasonable attorney's fee.

Because plaintiff's pleadings in both of these cases constitute clear and substantial violations of this section, the Commonwealth's motion for sanctions will be granted.

These cases arise out of the well-publicized nationwide tobacco settlement between the country's largest tobacco manufacturers and forty-six states, the District of Columbia, and two territories. Virginia is one of the participating states. Case No. HJ-2232-1 was filed on December 12, 1998. The plaintiffs are Robert H. Vaughan, Executor of the Estate of J. P. "Buster" Vaughan, III, and Teddy Gray Bowden. Defendants are James S. Gilmore, III, Virginia's Governor, the Commonwealth of Virginia, Philip Morris, Inc., R. J. Reynolds Tobacco Company, Brown & Williamson Tobacco Corporation, and Lorillard Tobacco Company. The 22-page, 57-paragraph "Motion for Declaratory Judgment and Further Consequential Relief" alleges that Vaughan's decedent died of smoking-related lung cancer in 1998 at the age of forty and that plaintiff Bowden has inoperable lung cancer as a result of smoking cigarettes. The pleading then refers to various suits filed by states against tobacco manufacturers; cites provisions of Virginia's Constitution and statutes concerning the duties of the Governor and other public officials; asserts that Virginia allows injured persons to sue tortfeasors; refers to proceedings of the U.S. Food and Drug Administration (FDA) that resulted in the drafting of federal regulations governing the manufacture and sale of tobacco products and led to a lawsuit being filed in North Carolina by tobacco manufacturers

against the FDA to prevent such regulations from taking effect; cites Governor Gilmore's filing of an *amicus curiae* brief in the North Carolina suit while he was Virginia's Attorney General that "strongly supported the position of the tobacco manufacturers and sharply attacked the United States Food and Drug Administration;" discusses at considerable length the "evils" of campaign and political contributions; alleges that Governor Gilmore has, as Attorney General and Governor, accepted over $300,000 from the tobacco industry and asserts that even though all of those funds were reported by Gilmore as campaign or political contributions as required by law, they were actually "gifts" which he was legally prohibited from accepting; cites Governor Gilmore's role in approving Virginia's participation in the nationwide tobacco settlement; asserts that by accepting the "gifts" and approving Virginia's participation in the settlement Gilmore has breached the "trust to which he was elected;" and seeks his removal from office. Specifically, Paragraph 56 of the pleading states:

> The plaintiffs seek an Order of this Court that James S. Gilmore, III, by his willful actions in breach of the constitutional, common, and statutory law of Virginia, and the duties of his office, be declared to have forfeited the Office of the Governor of the Commonwealth of Virginia.

In fact, while plaintiffs also ask for attorney's fees and "all such further consequential and incidental relief as is appropriate under the facts alleged," the only specific, substantive relief they seek is Governor Gilmore's removal from office.

Case No. HK-10-1 was filed on January 5, 1999. All of the parties are the same as in the first action except that Governor Gilmore is replaced as a defendant by Mark L. Earley, Virginia's Attorney General, and Liggett Group, Inc., is added as a defendant. The initial pleading, again called a "Motion for Declaratory Judgment and other Consequential Relief," generally follows the form of the first, this time referring to the Attorney General's obligations to the people of the Commonwealth and asserting that "[p]eople with interests in tobacco" gave over $400,000 to Earley and his "political running mates." Using the same language quoted above in seeking Gilmore's removal from office, plaintiffs in this case seek to remove Earley.

Little needs to be said about the "gifts" which form the basis of plaintiffs' complaints. As plaintiffs themselves point out, all of those "gifts" were reported by Governor Gilmore and Attorney General Earley as campaign or political contributions as required under Virginia law. The fact is that there are

hardly any politicians or, perhaps more accurately, hardly any *successful* politicians who do not accept campaign and political contributions. Whether that is good or bad is a proper subject for political debate. It is not a proper basis for bringing these actions.

Article IV, Section 17, of the Constitution of Virginia provides for the impeachment and removal from office of public officials:

> The Governor, Lieutenant Governor, Attorney General, judges, members of the State Corporation Commission, and all officers appointed by the Governor or elected by the General Assembly, offending against the Commonwealth by malfeasance in office, corruption, neglect of duty, or other high crime or misdemeanor may be impeached by the House of Delegates and prosecuted before the Senate, which shall have the sole power to try impeachments.

Virginia Code § 24.2-230, which is part of the title of the Code dealing with removing public officers from office, provides:

> This article shall apply to all elected or appointed Commonwealth, constitutional, and local officers, except officers for whose removal the Constitution of Virginia specifically provides.

When asked at oral argument on the Commonwealth's motion for sanctions how he could assert that these actions to remove Governor Gilmore and Attorney General Earley outside of the impeachment process are "well grounded in fact and [are] warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law" as required by § 8.01-271.1, plaintiff's counsel cited Va. Code § 2.1-639.19, which is part of Virginia's State and Local Conflict of Interests Act. That is all he cited. That section provides in its entirety:

> *Knowing violation of chapter constitutes malfeasance in office or employment.* — Any person who knowingly violates any of the provisions of this chapter shall be guilty of malfeasance in office or employment. Upon conviction thereof, the judge or jury trying the case, in addition to any other fine or penalty provided by law, may order the forfeiture of said office or employment.

Plaintiff's counsel was unable to explain how he could have a good faith belief that the above statute, which clearly applies only to criminal proceedings ("upon conviction thereof"), can possibly give this Court the power to grant the relief plaintiffs seek. Indeed, it is the Court's considered opinion that plaintiff's counsel did not have a good faith belief when he filed these actions that they would be successful. Instead, it was plaintiff's counsel's desire to "harass or to cause unnecessary delay or needless increase in the cost of litigation." No other purpose at all can be derived from the pleadings or from the colloquy between the Court and plaintiff's counsel at oral argument. Sanctions under § 8.01-271.1 are not only appropriate, they are required.

The Commonwealth asks the Court to impose as a sanction fees of $100 an hour for 70 to 90 hours spent by attorneys and paralegals in the Attorney General's office reading and responding to the numerous motions, memoranda, letters, and other papers generated by plaintiffs. That request is reasonable. From the time these cases were filed, plaintiffs have repeatedly written letters and filed pleadings which, as indicated above, could have no purpose other than to harass the defendants, cause needless delay, and increase defendants' costs. On February 9, for example, plaintiffs filed with the Court and served on defendants two thick (hundreds and hundreds of pages) loose-leaf notebooks of written materials that included research papers and reports about the dangers of smoking and smoking addiction, information from the Internet on smoking, internal memoranda of tobacco company lawyers and executives, allegations of Gilmore's and Earley's "pro-tobacco" sentiments, and more. Before that, so many letters were being written to the Court that the Court finally put a prohibition on any further letters being written to it, counsel being informed that the court acts on pleadings, not on letters. The point is that although the cases themselves are patently frivolous, plaintiffs' litigation tactics and mountains of paper caused considerable work for the Attorney General's office. Virginia's taxpayers should not have to pay for that work. They will not have to. The Court will impose a sanction to reimburse the Attorney General's office for seventy hours of attorney and paralegal time at the rate of $100 an hour as a combined fee for the attorneys and paralegals, the low end of the Commonwealth's request, to review and respond to the pleadings and other papers submitted by plaintiffs in these cases.

The Commonwealth also asks the Court to award a "penalty" sanction of $10,000 as a warning to plaintiffs, their counsel, and others that the conduct engaged in by plaintiffs and their counsel will not be tolerated. While the Court agrees that some sanction in addition to attorneys' fees is appropriate, the amount of attorneys' fees already awarded makes an additional award of

$10,000 unnecessary. Instead, the Court will award an additional $3,000 as a "penalty" sanction for a total monetary sanction of $10,000. The Court feels that such a sanction will sufficiently deter these plaintiffs, their counsel, and others from filing frivolous legal actions in the courts of the Commonwealth.

Finally, the Court will impose the sanctions set out above only against plaintiffs' counsel and not against the plaintiffs. While the Court does not know what conversations plaintiffs had with their counsel or what advice their counsel gave to them about filing these suits, the Court holds counsel to a higher standard than his clients. "Everyone is presumed to know the law," and § 8.01-271.1 makes no distinction between sanctions against lawyers and sanctions against non-lawyers. The Court, however, does make a distinction. Many people want to protest what they feel are unfair laws and circumstances. They may even want to file court actions for the sole purpose of harassing a real or imagined villain. Sometimes those people know that what they are doing is legally wrong. Sometimes they do not. They know they have freedom of speech. They know the courts are public. They may not know that there are penalties for filing frivolous actions. Rightly or wrongly, courts are sometimes lax in enforcing sanctions in those situations. Lawyers, however, know better. We have been trained to know what is and what is not allowed in court. Sometimes the line is unclear even for lawyers. When it is, they, too, must be given the benefit of the doubt. In the cases at bar, however, there is no blurred line. Plaintiffs' lawyer has been in practice since 1983. No lawyer, not even one with much less experience, could possibly look at the relevant law of Virginia and believe that these cases had even the slightest chance of success. Plaintiff's lawyer had an obligation to tell his clients that. Even if plaintiffs then begged him to file the cases as a protest or otherwise, his obligation under Va. Code § 8.01-271.1 and Disciplinary Rule 7-102(A)(2) of the Virginia Code of Professional Responsibility ("[A] lawyer shall not … [k]nowingly advance a claim that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law") would have required that he refuse. Because the Court imposes this higher duty on members of the Bar of this Court than it does on litigants generally and on the plaintiffs in these cases specifically, it is entirely fitting that the sanctions imposed for filing these actions be imposed on plaintiffs' counsel alone.

*Order*

These causes came on February 17, 1999, on defendants' demurrers and on defendant Commonwealth of Virginia's motion for sanctions and were argued by counsel. Upon consideration whereof, and for the reasons stated from the bench and in the letter opinion dated this date, it is ordered that the demurrers are sustained without leave to amend and both cases are dismissed with prejudice. It is further ordered that defendant Commonwealth of Virginia's motion for sanctions is granted and that a monetary sanction in the total amount of $10,000, plus interest at the rate of 9% per year from today's date until paid, is imposed on James B. Feinman, counsel for plaintiffs. The sanction imposed hereby is the total sanction imposed in both cases captioned above and constitutes a judgment against the said Feinman in favor of the Commonwealth and is enforceable as other judgments.